Good morning, Your Honors. Ronald St. Marie on behalf of the Appellant Perfume Bay. There are a lot of issues involved in this case. I want to jump right into the most important one to my client, and that is the issue of the injunction against the use of the domain name www.perfumebay.com. The domain name has importance not only to my client, but also to its customers and the public. It's the principal address at which the public can find my client on the Internet. And this is important for satisfied customers to find my client, for dissatisfied customers to find my client, and for new customers to find my client. Counsel, this isn't the only domain name that your client has, though, right? My client runs, operates domain names in their different areas. For the same item, for perfume, right? Exactly. There are five or six different names. So why is it so important that this particular name be preserved in its present form? Well, because the name Perfume Bay is their principal business, the principal Internet site that they operate. Well, it gets the most business. Right. But it may be one of the reasons it gets the most business, one of your opponent's strongest arguments in their favor. What argument is that? That you're using Bay. Well, if that's the argument, if the argument that they're going to make for this court is they're entitled to a monopoly on the word Bay on the Internet because they have a mark called eBay, I think that that's... Which is completely made up. It's not eMart, it's not eSale, it's not eBid, it's eBay. Right. And they have made up that word to cover the concept of what they do. They don't have e space bay. They have a fanciful word. Bay is just three letters that is a syllable attached to a two-syllable word. Which is completely fanciful. It doesn't mean a bay of water. Completely fanciful. It doesn't mean a bay of water. And they're saying you shouldn't use their completely fanciful. And we aren't. We're not using their fanciful name. We're using the bay in a traditional word, a traditional body of water sense. We're using bay in a dictionary sense. You go to the dictionary, look at the bay. We're using it as a mark on the Internet. We're using it as a mark on the Internet, but we're using the word itself. I didn't say mark, I said march as a selling place. Right. They're saying, look, we made up this fanciful word to cover our selling place, and we don't want people hanging on to us using the same fanciful word for their selling place to get business or to dilute the mark that we have. But we're not using that fanciful word. We're using two different words. We're using the word perfume, meaning fragrance, and bay meaning a body of water. We're not adopting their fanciful word. For example, a fanciful word might be Kodak for film. If we use the word Kodiak and sell ice cream, we're not adopting their fanciful word. We're using a completely different word with a different dictionary meaning. Maybe and maybe not. That would have to be analyzed using the particular facts that how the word is used, because we don't do it in a vacuum. We look at how it's used in the marketplace. And the judge found that the word perfume bay wasn't adopting their fanciful mark at all, that the two words for perfume bay was used without intent to rip them off. The issue is likelihood of confusion, not whether there was intent. That's only one of the factors. The issue is whether or not there's likelihood of confusion in the marketplace where these marks are used. And all we had essentially were the websites that were introduced. There was no survey that was introduced on it. There was no actual confusion showing likelihood of confusion. There was no survey evidence. There was no survey evidence on likelihood of confusion. There was a survey that was introduced for likelihood of dilution that the judge castigated, thought it was the worst survey essentially that he ever saw. There was a previous survey not introduced in the evidence where eBay actually went to the marketplace and showed people the websites and said, are you confused essentially? And they abandoned that survey, the record shows, because it wasn't giving them the numbers that they wanted. Well, something convinced the district court that there was likelihood of confusion. And again, just to clarify, the court essentially found in favor of my client on virtually every single claim except for this one-word iteration of the word perfume bay. So this is not a case where the court found that perfume bay two words is in violation. Exactly. And so the court made a very, I mean, the court really seriously considered all the factors. And it's difficult for me to accept your argument that the district court erred, because I think the district court really tried to give your client the opportunity to exploit its market, yet recognize that eBay had built up some goodwill in its name. And understood that eBay has goodwill in its name. Let's look at it this way. My client, the judge found my client was entitled to use perfume space bay. Exactly. Okay. Didn't find that to be confusing at all, applying the factors that were before him and the evidence before him. The judge found, however, that if you eliminate perfume, eliminate the space, and this case is ironic because it doesn't deal with words or letters. It really deals with the importance of a space. If you eliminate that space, then there is confusion. And the reason why wasn't because some customer came in and said he was confused or she was confused. The reason why is the judge looked at the word and after it was pointed out said, look, the last four letters of perfume bay, one word, are eBay. Found a material similarity. Right. What I think is wrong about that decision, I think that's completely unnatural. I think if you read the word perfume bay, especially www.perfumebay.com, you don't focus on the eBay and the last three letters. It depends on how low the IQs are of the people you're thinking about. I mean, is this more on time or what? Well, if it was more on time, I think we might be in trouble. Let me interrupt. What are we talking about? What are we comparing? Is it one word, perfume bay, against eBay? Is that precisely what we're supposed to be comparing for material similarities? On this point, yes. On my appeal, yes. And does that include a capital B in there, too? On my appeal, no. We're not fighting over the capital B. Actually, if they want an injunction saying don't use perfume bay, one word, anywhere but the domain name, we would be fine with that because we really never used one word perfume bay after we originally started. I mean, we basically abandoned that early on. Abandoned what? You've abandoned what? One word used on the Internet of just perfume bay as if it was a trademark, to call ourselves perfume bay. So what are you calling yourselves now? Perfume bay. Two words? With a space. With a space. All right. I'm really confused. Then what the hell is this case all about? It's about the domain name. We can't use perfume space bay. You want to use perfume bay as one word for your domain name. We have to. In other words, we have to. supports your position that if perfume bay has been found to infringe in its uses, that its use as a domain name should be excluded from all the other uses. The key case is the entrepreneur media versus Smith case where the Ninth Circuit found that in the use of a domain name, it's a different context. Domain names are special contexts. But entrepreneur had a PR, and it's entrepreneurpr.com. Right. In its domain name, which is a very different situation than perfume bay. That's why I disagree with you. Because I think that entrepreneur, PR versus entrepreneur, is a lot closer to my mind than perfume bay and eBay. To my mind, you may take a moron to confuse it to. Because, and I'm using Judge Trout's comment, to confuse, you know, I say perfume bay. Who's going to think eBay? A lot of people. All right. Well, if a lot of people are going to think it, where was the evidence of that? That's what's frustrating. We went up against. It's a substantial similarity determination that was made by the court. Obviously, the court was a moron because the court found that those were substantially similar. And that's why we're before this court, because I think that there was error there. I'm just saying reasonable people could find those are substantially similar. That's why I don't think the district court erred in that. Because eBay has a connotation in the marketplace. I mean, that bay has a connotation. Not the connotation for where ships sail in. You don't even pronounce it, though, eBay. You don't say perfume eBay. It's perfume bay. Exactly. If you read perfume. If you pronounced it perfume eBay, that might be one thing. But that's not the way anybody in the world would pronounce it. Exactly. If you read perfume bay and you said perfume eBay, I would be shocked. When you first saw perfume bay, www.perfumebay.com, when you saw it written, did you read it perfume eBay? I did not read it perfume eBay, but you could make the connotation that it's bay. I mean, it's an offshoot of eBay because when you see bay, it connotes the fanciful concept of a marketplace. Well, if that's true, then that's completely different from what they submitted. What I hear you saying is you're trapped by the Internet rules of the road. You have to use a one-word deal, so you can't space it out. Is that the problem? Absolutely. Absolutely. We had a choice. We'd love to have perfume space bay, but they don't let us do that. If the United States recognizes a new site, look for perfume bay on the Internet. Most people, if they're going to do it just typing it up, would type in perfumebay.com. Everybody uses Google. Let's say Google, for example. If I put perfume space bay in Google, what do I get? You more likely will get our first 15 references will be my client. Rarely do people go into HTTP, slash, slash, and all that. Everybody uses Ask Jeeves, Ask.com, Google. You put perfume bay, you're right. So you don't have this problem as badly. I think we do because there are still people. I don't know how intelligent they are. There are still people that the court recognizes that will guess and will type in perfumebay.com on the Internet. There's also ramifications. People have our name in their Internet cache, and they'll just start typing perfume, and it'll fill in for them. You've done this, I'm sure. It'll fill in for them. Then they click, and they go to perfume bay. It's not there. That's the problem. The significant problem is just in terms of the market. The Internet search engines track by domain name. They don't track by name. And ratings for our company track by domain name. They don't track by just our name. So it's a significant… But over time, if one of the other, I mean, if there's a demand for the product, over time, if the other domain names are used, and if the customer base is what it is without use of the similar to eBay, then what… It'll all come out in the wash. It'll come out in the wash. Yeah, but we're not here talking about the wash. We're talking about what's right and wrong. And, you know, let's look at it this way. Well, that's part of what's right and wrong. The balance of the harm to your company versus the damage to their mark. So that's part of the equation. There's no established damage? Dilution. They didn't even have a damages claim in the case. They didn't even assert a damages claim in the case. Dilution is harm. We're not talking that. I will talk dilution. That's a wonderful topic to talk about. It's completely different from this case. Well, I'm just saying that. That was part of the case. And the court found no dilution for good reason. The court found… But just going back to the… So that may or may not be upheld, but… There are alternatives the court denied us, and I think they're important to focus on. Perfume-Bay. I mean, that separates me from the Bay. That separates that name. There's not the conception test where you look down on the website and say, oh, there's eBay together. It just seems to us there's no reason to deny us that. Are you satisfied with Perfume-Bay? No, I would go back and say we got something. I mean, I think we're entitled to Perfume-Bay one word. Because, again, I cannot admit we didn't have anyone testify. I think the question was asked in trial. Have you ever heard anyone pronounce Perfume-Bay, Perfume-Ebay? Oh, no. And their people said no. That's not the point. I think the point is that that is the point, because no one perceives it. Because nobody's pronouncing the word. People are typing the word into the computer. The pronunciation of the word is not the… They're looking at the word. But you looked up, did you perceive it to say Perfume-Ebay? Ask yourself. If you looked at the word first time and said Perfume-Bay, that's Perfume-Ebay. I see that clearly. You know, I might say, okay, I'm wrong. I cannot believe that you would do that, that you did that when you read Perfume-Bay. I didn't say Perfume-Ebay. Okay. But Ebay has a connotation in the marketplace. I didn't hear Perfume-Ebay. But that bay part of it does skip your mind to perhaps related to eBay somehow. That's not confusion, though. Thinking that perhaps it's related to eBay may be a delusional argument. It's not confusion. If it's substantially similar, it is confusion. The law says that that type of confusion, that inquiry confusion, is not recognized confusion under the trademark law. The trademark law doesn't protect people from thinking about whether there's a connection. It's protecting people from being confused. In that case, you're not confused saying, oh, that's eBay. Because I cannot believe anybody would see Perfume-Bay and say, that's eBay. We wouldn't have this case if it were crystal clear. I think it's wonderful. I actually think it's a wonderful case. I mean, the irony of the space being that important. Even they say the space doesn't change the connotation. That one word, Perfume-Bay, and two words, Perfume-Bay, is no different. But the district court did not agree with that. I understand. Again, the final thing I want to talk about right now is the use as a referring URL. I don't know if it was clear what we're referring to when we talk about that. You can type in Perfume-Bay and be transported to a completely different website. And that's really the use of the domain name solely as an address. And the judge denied us the use of that. Well, beyond the month or two that he allowed us initially. I don't think there's any trademark purpose to be served by denying us the use of the term Perfume-Bay.com as referring URL. There's no purpose to be served. I have what looks like four minutes. I'd like to reserve the rest for rebuttal. Thank you. Thank you, counsel. Thank you. I assume when you're saying URL, you're meaning URL. Okay. I just want to make sure that there's no confusion here. May it please the court. John Crittenden from Cooley Godward Cronish for eBay. Counsel table is my colleague, Frank Goldberg. I would like to address one point that Mr. St. Marie raised and then give you a summary of the three points of the arguments on eBay's appeal. Mr. St. Marie has suggested that Perfume may be permitted to use a URL with Perfume-Bay. This was a request that was made to the district court and was rejected. There was evidence that the most common misspelling of the eBay trademark is E-B-A-Y. That's in Supplemental Excerpt of Record 47, Mr. Monahan's declaration, page 337 of the excerpt. The court agreed with that and noted that a hyphen connotes conjunction and therefore a hyphen is the equivalent of two words that are conjoined and not two words with a space. Certainly, Perfume-Bay has many other options for its domain name as are in the record and does not need to use Perfume-Bay.com as its domain name or in its URL. I would now like to summarize the three main points of eBay's appeal. First is the contract claim. The contract claim is the simplest claim. The facts were uncontroverted. There was a written exchange of promises, performance by eBay, and breach of Perfume-Bay's promise to change its name. And the trial judge erred in concluding that because this discrete enforceable agreement was not a settlement of the entire dispute, it could not be a contract, even though it met all the legal requirements for one. And this question is reviewed de novo. The second main point that I will discuss is the trademark dilution claim under California law. And the facts supporting this claim likewise were uncontroverted. That's the problem of the generic plus bay names for Internet marketplaces. And the trial judge even remarked, of course, it dilutes your name. But the court followed an incorrect two-factor test for likelihood of dilution from the Seventh Circuit that omitted key factors, in particular the distinctiveness of the eBay mark that were in the controlling Ninth Circuit test in Thane v. Trek and are now contained in the new Federal Trademark Dilution Revision Act enacted in October of 2006 after the briefing on this appeal was completed. Professor Lemley's testimony before the House of Representatives has an interesting description of dilution using bay. I'm sure you're familiar with that testimony. Yes, I am, Your Honor. Was Professor Lemley a consultant for eBay or was he? No, he was not a consultant for eBay in this case or otherwise. He did become aware of this case and eBay provided him that information. So he was not your shill speaking to Congress? No, he was not our shill speaking to Congress, no. The dilution claim is a legal question. It's reviewed de novo. Certainly, we agree with Mr. Lemley's assessment of it, and we are gratified that he saw the issue and, as an independent, presented that to Congress. The third issue on our appeal is a trademark infringement claim, and the trial court's finding that conjoined versions of the Perfume Bay mark caused a likelihood of confusion and infringed the eBay mark was supported by the evidence and was not clear error. But the court's finding that the versions separated by a space, that those versions did not infringe, was fundamentally inconsistent, and we contend that that was clear error. How so? Well, Your Honor, trademarks are analyzed for their commercial impression. And in this case, the court analyzed all of the various sleet craft factors and determined that the conjoined versions of Perfume Bay infringed the eBay mark. Now, the standard for similarity of the marks looks at the total commercial impression. That's the appearance, sound, and meaning of the mark. And so, given that Perfume Bay, in one word, is likely to be confused with eBay, what does adding a space do to change that? What clearly erroneous finding did the court make in coming to the opposite conclusion for the non-conjoined version? The court, the clearly erroneous conclusion that the court reached was that adding a space in light of all of the other factors changed the commercial impression so much so that there was no longer a likelihood of confusion. So how is that clearly erroneous? Well, because there are ample cases where the addition of a space is immaterial. For example, in the Planned Parenthood case. You have to look at the particular marks, the particular way it's used. So you're asking us to second-guess that. How is that clear? I just don't understand how you can argue it's clearly erroneous when the judge looked at the factors, looked at the similarity, how the words are used. eBay is always conjoined. It's not two separate sounds. And so I don't understand how you can argue that the judge clearly erred. Well, it is inconsistent with abundant authority, such as the Planned Parenthood case and others, where a space was held in Brookfield, where movie buff with a space and without a space were held to be the same mark. And that is traditionally how marks are analyzed. But those were not Internet. The Internet is a peculiar marketplace. And that's what you rely upon, the eBay mark and how the eBay mark looks. So that was really critical to the court in terms of its analysis, how eBay is used in the marketplace. Well, certainly in the Planned Parenthood case and the Brookfield case, those involved the Internet as well. If the space changed the meaning of the word, then the commercial impression would be different. But those are real words. I think that's the difference is whether you see the words run on or whether they're separated. It's still those two words. Exactly. And the same is true with... But eBay is a fanciful mark. It's not like you're really reading a word like you are with movie buff or whatever real word. I can see how the court could make a distinction. eBay is a fanciful mark, and the dominant component of the mark is bay, as we have from the testimony of Perfume Bay's own expert, who said that it's irrefutable. But the court did not give you a protected mark for the word bay, did it? No. But I believe that the court's opinion acknowledges that the dominant component of the eBay mark is the bay suffix, and that was certainly behind the court's decision in concluding that the conjoined versions of Perfume Bay and eBay are similar. Well, I thought the court was persuaded by the fact that conjoined, it included the mark in its entirety, eBay, contiguously, as opposed to when it was separated, it didn't have the contiguous version of eBay contained in the mark itself. I believe that's what the court did. And I believe where the court erred is that it didn't look at the totality of the factors for determining commercial impression, appearance, sound, and meaning. And marks don't have to be identical to infringe. That's clear. And when you add a space, if it will change the sound and meaning, that will certainly change the commercial impression. If you take the word together and put spaces in, it becomes to get her. Different sounds, different meanings. That doesn't happen when you add the space to Perfume Bay. And that is the basis for our view that the court committed clear error. I understand your argument. I'd like to turn to the contract claim, which is the simplest claim. The facts were undisputed. The exchange of promises is contained in the November 2003 email screen. What was the agreement? I'm sorry? What was the agreement? The agreement was Perfume Bay agreed that it would change its name to a new name that did not include the word bay or otherwise infringe eBay's mark in a reasonable time for no payment. And in exchange, eBay would give its consent to the suspension of the trademark office proceedings that it had filed against Perfume Bay. Why then did the parties in their request say this request is being submitted in order to permit the parties to discuss possible settlement? Why didn't it say we have reached a settlement? Well, first of all, that document was submitted by Perfume Bay's counsel with our consent. We didn't read the language beforehand. The parties had not reached a total settlement of their entire dispute. So that seems to me to pull the rug out from underneath your position completely. You've obviously talked yourself into believing it, but, I mean, this was part of a settlement deal. And parties frequently say, okay, well, let's talk about things we can agree upon. We'll agree upon this, we'll agree upon that, we'll agree upon everything else, but what about this? And if this falls apart, everything else goes by the wayside. That's what Judge Keller said. And why is that wrong? Because in this case, there was a discreet promise. It's not discreet. You cannot extract it from the context in which this was being done. This was all part of an attempted settlement. The settlement fell apart. Now you're trying to hold them to part of the settlement that they wouldn't agree to unless the whole thing was resolved. That is actually inconsistent with what the facts are. As you will see from the email string between the parties, Perfume Bay asked if eBay would suspend the proceedings in order to have a settlement discussion. eBay said, no, we are not going to suspend unless you first agree that you will, in fact, change your name. And so Perfume Bay wrote back and said, we're strongly considering changing our name. And in response, eBay said, no, we heard you say that you would change your name. You must change your name. You've got to get rid of your nuclear weapons before we'll talk to you. I'm not sure that's a correct analogy, but. Well, you must get rid of your nuclear weapons in six months. And you say, well, we won't get rid of them for 12 months. Now, isn't that difference in the time lag a significant difference in reaching an agreement? No, because the parties had already agreed to the term for the name change. Reasonable. They hadn't agreed to some very important parts, which Mr. St. Marie is arguing today, that they need a period of time, a long period of time, in which to make sure all their customers, they can keep on board. And if that essential part of the agreement can't be agreed upon, I find it difficult to see an agreement there. But, in fact, the parties did agree, and it appears in the e-mail string, S.E.R. 13. The parties did agree that the time for the name change is a reasonable time. Now, there is authority that says that if you don't even state the time under California statute, a reasonable time will be imposed. The discussion that occurred after eBay performed its obligation and gave its consent, the discussion about the length of the time for name change, that was a disagreement in interpretation over the party's previous agreement. I think you'd do better to talk about dilution than to talk about contrast. I'm happy to refer to dilution. Where you have a mark like eBay that is extremely distinctive conceptually and in the marketplace, a lesser degree of similarity is required in order to find likelihood of dilution under California law. And at the time of trial, this was the law in the Ninth Circuit. That's the Thane case, which the district court expressly disregarded. And since then, this principle has been incorporated into the Trademark Dilution Revision Act of 2006, or the TDRA. Now, the TDRA brought federal law in line with California and other states by imposing a likelihood of dilution standard for federal dilution. And it also provided something that was not in the old federal statute, and that's a multi-factor test for determining likelihood of dilution by blurring what we have here. Did you have a federal dilution claim and a state dilution claim, or only a state one? We had both. And we did not appeal on the federal dilution claim because at that time, the Supreme Court had an actual dilution standard. And we chose because the California and federal laws are comparable in remedy. And now they are identical in the requirement of likelihood of dilution. So where do we begin? The district court found, quote, that eBay is an extraordinarily strong mark, both in terms of the distinctiveness of the mark as a fanciful word and in the market strength of the eBay brand. That's in ER6 at page 149. And it was also undisputed that the bay suffix is highly associated with eBay. Perfume Bay's expert admitted, quote, that the conclusion that the word bay is associated in many frequent Internet shoppers' minds with eBay is irrefutable, end quote. How does that fit in with the district court's conclusion that you're dealing with a pretty educated person here and a sophisticated shopper? The district court concluded on that factor of this is in the likelihood of confusion analysis, which is not relevant to this. I know that. But you've got a problem here, I think, because he says, well, you're dealing with sophisticated people here, not your ordinary schlep who's not going to understand any of this stuff. The district court found on that factor that the typical user of the Internet was more likely to be intelligent and better of a higher income than a shopper in a brick-and-mortar store. The district court didn't make a specific statement as to which side that favored. But in any event, that is not pertinent to the dilution analysis because that's not a factor for dilution. So the bay suffix is associated with eBay just as the RS suffix is associated with Toys R Us and the Mc prefix is associated with McDonald's. And the undisputed evidence at trial was these generic plus bay names, these online marketplaces that call themselves names that combine the word for what they're selling with the bay suffix of eBay, auto bay, military bay, and so forth, is an ongoing problem which, if not checked, will result in the dilution of the eBay name to the point that the bay suffix just means online marketplace, a generic indicator, and that was Mr. Monahan's testimony. And the court's visceral reaction to this was very telling. The court said, quote, of course it dilutes your mark, end quote. Now, where the court erred is in using the wrong legal standard for dilution and misunderstanding that test by applying an overly strict standard for similarity. It applied the Eli Lilly Seventh Circuit test, the Prozac, Herb Prozac case, which has two factors, renown of the senior mark and similarity of the marks. But it ignored this court's teaching in Thain that distinctiveness must be considered. It erroneously stated that the marks, that the requirements of the marks be nearly identical is categorical and not instead of a balanceable factor, which Thain says the opposite. You consider distinctiveness and relatedness of the products. And it stated that the marks must be nearly identical. And the Eli Lilly itself, the Eli Lilly court referred to the similarity of the marks and itself considered distinctiveness of the word Prozac and relatedness of products in determining that the marks were similar in its likelihood of confusion analysis, which it imported into its dilution analysis. Now, the Thain court endorsed the Second Circuit's view in Nabisco versus P.F. Brands, the Goldfish Crackers case, quote, that the similarity requirement may be less stringent in circumstances in which the senior mark is highly distinctive and the junior mark is used for a closely related product, end quote. And we now have that factor incorporated and codified into the Federal Dilution Revision Act, 15 U.S.C. 1125C, which also includes the degree of similarity, not identity, degree of similarity between the marks, extent to which the use of the famous mark is substantially exclusive, degree of recognition of the mark, intent of the defendant, and actual association. Well, you have a finding of benign intent. There's no evil intent. Intent is not required. Well, you mentioned intent. There is none. And you had five years to find actual confusion. I assume you looked hard and you couldn't find any because there's no evidence of actual confusion. There was evidence. Actual confusion is not required for dilution. I understand that. But you didn't find any evidence of confusion. We did submit evidence of actual confusion in the form of perfume. And Judge Keller said it's woefully inadequate. It's a farce. For trademark infringement, actual confusion is an element but not required. For dilution, the standard is actual association, not actual confusion. We had actual association in that people were calling Perfume Bay and stating, are you associated with eBay? We had in the court's record, newspaper reporter making the same inquiry. Why is that? Why is an inquiry actual confusion? That suggests there's not actual confusion. It doesn't. You can't ask a question? Correct. A question is not necessarily actual confusion. But it is clearly actual association, which is a standard for dilution. For dilution, association is sufficient. I'm not interested in association, simply asking a question. Were you going to address the unclean hands issue? I would briefly. I only have about 40 seconds. But clearly there was no the finding was erroneous because there was no evidence of the elements of defense. There's no evidence that eBay actually purchased any of these keywords. The only evidence was it could have been an eBay affiliate who purchased a keyword that might even be named Perfume. And this conduct did not relate to the subject matter of eBay's claims. Inequitable conduct really requires that the defendant prove the mark, prove that the plaintiff used its mark to deceive consumers. There was simply no evidence of that. The district court offered to open up the trial and permit you to bring in further evidence. And you said you didn't want to. Now, have you waived complaining now on that issue? Well, no. It's a legal question. It would have been the failure of evidence was really on the part of Perfume Bay for not producing evidence that there was any actual unclean hands on the part of eBay. Didn't they produce enough to throw it over to you to rebut what they had demonstrated? Actually, they really didn't. There was simply speculation. What they offered was a screenshot showing that when someone searched the words Perfume and Bay, a sponsored link advertisement not placed by eBay, but by some third-party affiliate of which eBay has no control, in which the Fair Deals case that we submitted in our Rule 28 letter shows does not create a basis for agency. That was the only evidence that they offered. And then the rebuttal evidence that we provided, the testimony of eBay's marketing executive, showed that this doesn't come from eBay. And even if it did, where's the confusion? So clearly, there was a failure to show evidence of inequitable conduct on the part of eBay, and it did not relate to the subject matter. This was not a case where eBay trumped up evidence of confusion and offered it to the court. This wasn't even evidence that eBay was aware of. And therefore, it cannot constitute the disfavored defense of unclean hands that is virtually never used in connection with that defense of a trademark case. All right. Thank you, counsel. Thank you. Rusato? I won't address the arguments on breach of contract. We always thought that was a simple case, right. Dilution.  They say the test is a Nabisco test. They say that the Ninth Circuit required in the Thane in footnote 7 that we follow Nabisco. In fact, if you read footnote 7, it says that Nabisco was considered, but we have a different test than the Ninth Circuit. It doesn't say we're going to apply a life-data confusion test. This is the multifactor test of Nabisco. What they say in their brief is that there is a problem because the court didn't consider two additional factors. And had they considered them, we would have changed our mind. First factor is the fact that the products are sold in this or similar services are being sold. That's a confusion issue, and if you notice in the Trademark Dilution Revision Act, that factor is not there. The factor of the relatedness of the services is not there because dilution applies regardless of whether the services are related or not. So that factor would have been meaningless to judge. The second factor is the fact that eBay is fanciful. We say that. I believe that cuts against their argument of dilution. Going back to Kodak versus Kodiak, if I use Kodak for film and then use Kodiak for ice cream, there's just one letter difference between Kodak and Kodiak, okay? But because Kodak is fanciful and Kodiak has meaning, there can be no dilution. People will not think of Kodiak and think, oh, yeah, Kodiak. Let's look at these marks. Okay, these marks, the Dilution Act requires that the mark is famous. Do you concede that it's famous? We did at the trial, and we're not going to do it. You do not concede that? Not in 1999 when we started using it. Okay. So you don't think it's famous? Now, undoubtedly. In 1999, you don't think eBay was famous? Right. Okay. But one of the issues is, are the marks identical? Not identical. They're not identical. Are they nearly identical? They must be similar enough that a significant segment of the target group sees the two marks as essentially the same. And there's less similarity required the more famous the mark is. Yeah, but I agree. I just, again, we know there's no testimony as to how people viewed Perfume Bay. The only thing we had was our common sense, and the only thing the judge applied was his common sense, I believe. Are there people who look at Bay, like Perfume Bay, like Oil Bay, like Nazi Bay, and when they see those words, whether they're joined or not, say, think, this is an Internet marketplace where I can get this product? I don't know. For your purposes as a hypothetical, I would say, yes, there are people. Are there people who hear Nazi Bay and say, that's eBay? The same thing. Not that it's related, but they think it's the same word. That's selling on the Internet. Electronic sales. I don't care where it's sold. In creating a fanciful word for their electronic sales on the Internet, hasn't eBay done something that other people now are trying to add on to their electronic sales on the Internet to try to get a recognition from what eBay has done to direct people to their market? That's confusion. That's not confusion. That's association, and that's dilution, isn't it? But in the Ninth Circuit, we apply the standard. When you see Perfume Bay, do you say, that's the same as eBay? What case says that? Even the hypothetical moron. Counsel. What case says that, that it's the same? That's the thing case. That's the thing case, and that's the… Herbert Trick. Playboy, I believe, case as well. That's where the thing gets it. They have to look at it and think it's essentially the same word. The same service. Not the same service. Not related service. Not that it refers to the same kind of business. Not that it could also be an auction business. Not that they sell tchotchkes. People are trading tchotchkes on this site, like Nazi tchotchkes, I guess, for Nazi Bay. Not that, but they think it's the same word. Essentially the same. Okay, essentially the same word. I mean, do you really believe that people see Nazi Bay and think that means eBay? I don't think so. Well, it's somewhat like the media's use of gate. They have attached gate to everything under the sun. Everybody knows it's something that smells, but nobody thinks, well, it's Watergate again. It's something else that smells, something else that's for sale, and even if you think that way. But, yeah, again, if ours was a case where Perfume Bay had a member site where you had to sign up, sign in using a password. No, but it's not used the same. That's the argument we made before. It's not the same use. The mark is essentially the same. I mean, if you, again, I can't argue, but if you believe Perfume Bay is essentially the same as eBay. Boom. They win. They win. If you don't, please. My version of reality is that much different than other people. Well, you're an advocate, so your version is tempered by that. I also think there's something basically wrong with allowing a company to take a, they say it's a suffix bay. It's not a suffix bay. It's a one-word, fanciful term, eBay. It's not like San Francisco Bay. They denied that. It's not like there was a report that it was Echo Bay. That's how eBay came up, Echo Bay. The guy went to register the trademark. It was taken, so he showed it to eBay. They say, no, that's not true. It's just a completely fanciful mark. So they should not be able to co-opt a suffix or say now bay is a suffix. It just isn't. It's like a word like perfume. Is fume a suffix? No. You know, in ways your argument could be interpreted as an argument that eBay might make because they did make up an entirely fanciful word to describe what they're doing, and they're saying we registered that fanciful word, and other people can't use it for the same type of service. And if we were using perfume, eBay put us in jail because we're not doing that. We're not using their fanciful word. You're using bay. Now, you say it's because you envision tanker ships full of perfume. Look at the websites. You'll see the seashells, the sand, the water. What a wonderful word. You know, perfume bay, a place where perfume lovers go. It's a place where ships bring all the perfume in. It's a wonderful marketing term. We don't want to be known as the auctioneer. Very coincidental. Yeah. Very coincidental. And please don't let them co-opt words like bay, especially when it's used in the way we use it, like a body of water. The word bay has a meaning in the industrial complex. You put it in this bay, put it in that bay. It's a place where you put things when you're working on them and fixing them. I didn't even think of eBay as fanciful. I thought it was that kind of a bay. Like Bombay. Yeah. Again, we don't know. But we're told it's fanciful. I think that, again, cuts against some undilutionary argument because we're not using it. No, eBay is fanciful. Right. I mean, I thought it was like Pig Latin that, you know, it was like when we were kids we used to use to do. Big Pay Latin. Yeah. I thought it was an electronic place where you go to buy things. The issue of unclean hands. Their argument is, well, we didn't establish that they controlled their affiliates. Well, in fact, the judge found that they did. What happens is affiliates drive business to eBay. They get people to click on clicks going to eBay. If they buy, they pay the affiliates. They pay them off. What was the intent to deceive evidence? Did you read the advertisements for if you want, the people would type in Perfume Bay on the web, on Google. They get a paid ad. I saw that ad. It's saying, if you want Perfume Bay, come to eBay. Are you saying that that's implied intent to deceive? That's a lie. Their own guy said that's not true. And the thing that I think most upset the judge was their marketing guy said, there's nothing wrong with that. Google allows it. For example, if we don't sell Coca-Cola on eBay, we should be able to say an ad, if you want Coca-Cola, come to eBay. That was the evidence of intent to deceive? That's what you're saying? The fact that it was done, events, intent to deceive, is that your argument? Deceitful. It is deceitful. It's deceitful. By very nature. If you had an advertisement. It's a bait and switch. If you had an advertisement, you want to buy Ford, come to Joe's Mazda, and you didn't sell Fords, but people came to say, I like your Mazdas. Give me your money or I'll shoot you. It's sufficient to infer intent. Where's the intent? The intent is in the words. I don't know. I think I'm over. You're all over. But I'm just curious as to whether or not, you know, what case authority you're relying upon to say, I mean, if the act itself evidences the intent, then you never have to prove intent, because you say they committed the act. So why would you even have that element if it didn't connote something different? That's my problem I have with your argument. I think that if you come to the court, in this case they came to the court and said, Perfume Bay is bad because they're out there confusing people into thinking eBay has an association with Perfume Bay. And then they're out there doing worse. They're actually saying specifically there is an association between eBay and Perfume Bay that you can find unclean hands. And the unique part of this case is that they found unclean hands and still gave them the equitable remedy that they sought. When, in fact, if you applied that from a defense, you would have said no. But what authority is there for finding unclean hands and then issuing an injunction that had not even been asked for up until that point? I don't. I believe that's just the general authority of a district court judge. If you see something wrong that's presented in evidence and it falls within a defense, he can use his equitable power to say, Stop it, eBay. Stop it. And he cited a case. We don't think that Alpo case. We think that eBay is correct in distinguishing that, but I think that's well within the powers, the equitable powers of a judge to say, Stop that. What's missing? Well, the thing that disturbed me a little was that this was added on at the end of the case. It wasn't part of the contemplated range of issues that the parties were trying. And you said the district court judge is supposed to chastise me for not asking to reopen because he wanted us to ask to reopen so we could take them to task for doing this. And you were correct, Your Honor, when you said, Didn't you weigh that? And they did. In fact, if you read the statement in the hearing, it says, We will desist. We'll desist from making those advertisements. And lo and behold, you can't see these kinds of ads anymore on the Internet because they do have control over their affiliates. They are benefiting from this. Thank you, counsel. Thank you. This case is argued and submitted for decision.
judges: Trott, Roth, Rawlinson